IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DELLMAR RAY PHILLIPS,                        3:11-CV-01212-BR

         Plaintiff,

                                             OPINION AND ORDER
v.

JOE DECAMP, Superintendent

         Defendant.


**DELLMAR RAY PHILLIPS**
188 SE Fourth Street
Apt. 6
Ontario, OR 97914

         Plaintiff, *Pro Se*

**JOHN KROGER**
Attorney General
**ANDREW D. HALLMAN**
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301
(503) 947-4700

         Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Joe DeCamp's Motion (#30) to Dismiss.  For the reasons that follow, the Court **GRANTS** Defendant's Motion and **DISMISSES** this matter **with prejudice**.

<u>BACKGROUND</u>

The following facts are taken from Plaintiff's Complaint:

On July 14, 2010, Plaintiff Dellmar Ray Phillips was convicted of one count of Driving While Suspended in violation of Oregon Revised Statute § 811.182 in Malheur County Circuit Court. Plaintiff was sentenced to 70 weeks incarceration at Deer Ridge Correctional Institution (DRCI).

On December 16, 2010, Plaintiff signed a "Substance Abuse Treatment Informed Consent" form in which he refused to be enrolled in the substance-abuse program at DRCI.  The form notified Plaintiff that refusal to participate in the substance-abuse program "may affect any reduction in [his] term of incarceration."  Compl., Ex. 1 at 6.

At some point Plaintiff attended a "release hearing program" at which Plaintiff was advised his release date was August 4, 2011, due to his failure to complete the substance-abuse treatment program.

Plaintiff wrote letters to Defendant, among others, grieving

his release date.

On June 13, 2011, Christine Popoff, Administrator of Offender Information and Sentence Computation (OISC), informed Plaintiff that Oregon Administrative Rule 291-097-0020 "requires the granting of 0% earned time for program compliance if there is a program failure or refusal of a required program." Comp., Ex. 1 at 3. Popoff advised Plaintiff that because he refused to participate in the substance-abuse treatment program, "OISC is not able to credit you with program earned time as a result." *Id*. Accordingly, Plaintiff was never awarded any earned-time credits.

On July 1, 2011, Brian Belleque, Westside Institutions Director, advised Plaintiff that he had reviewed Plaintiff's grievance and Popoff's response and concluded the OISC's response was appropriate. Compl., Ex. 1 at 11. Belleque noted:

> With your recent intake assessment it was determined that you should participate in an alcohol and drug program, which is why you were place in the program at DRCI. When you reported to the program on the first day, you signed yourself out within the first hour, which created the program failure.

*Id*.

On August 4, 2011, Plaintiff was released from custody.

On October 6, 2011, Plaintiff filed this action pursuant to

3 - OPINION AND ORDER

42 U.S.C. § 1983[1] alleging Defendant deprived Plaintiff of his
right to due process under the Fourteenth Amendment to the United
States Constitution when Plaintiff was denied his earned-time
credits because he fail to complete the substance-abuse treatment
program.

Defendant moves to dismiss Plaintiff's Complaint.

## STANDARDS

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955.  A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged.  *Id.* at 556.
> . . .  The plausibility standard is not akin to a
> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully.  *Ibid.*  Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'" *Id.* at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Bell
Atlantic*, 550 U.S. at 555-56.  The court must accept as true the
allegations in the complaint and construe them in favor of the

---

[1] Plaintiff's claims are cognizable under § 1983 because he
is no longer incarcerated.  *See Heck v. Humphrey*, 512 U.S. 477
(1994), and *Nonnette v. Small*, 316 F.3d 872, 877 n.7 (9th Cir.
2002)(a former prisoner may challenge a loss of good-time credits
under § 1983 because habeas relief is no longer available).

plaintiff.  *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).

   "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned."  *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).

   A *pro se* plaintiff's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Thus, the court must construe *pro se* filings liberally.  If a plaintiff fails to state a claim, "[l]eave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to *pro se* plaintiffs."  *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)(quoting *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000))

## **DISCUSSION**

Defendant moves to dismiss Plaintiff's Complaint on the grounds that (1) Plaintiff has not alleged sufficient personal involvement by Defendant; (2) Plaintiff did not have a state-created liberty interest in the award of earned-time credits, and, therefore, Plaintiff was not due any process before those credits were denied; and (3) if the Court concludes Plaintiff had a state-created liberty interest in the award of earned-time credits, such a right was not clearly established, and, therefore, Defendant is entitled to qualified immunity.

**I.    Personal Involvement**

Defendant asserts Plaintiff has not alleged sufficient personal involvement by Defendant.

"Liability under section 1983 arises only upon a showing of personal participation by the defendant" in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability may also be imposed if the defendant sets into "'motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir. 1994)(quoting *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987)).  "'A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

6 - OPINION AND ORDER

violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)(quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)).  It is well-established, however, that "§ 1983 does not impose liability on individuals for the acts of their subordinates under a *respondeat superior* theory of liability." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978).

Plaintiff only alleges in his Complaint that he sent Defendant a letter and Defendant did not respond.  Plaintiff does not allege Defendant was personally involved in the calculation of Plaintiff's sentence or with the determination that Plaintiff did not complete the substance-abuse treatment program.  The Court, therefore, concludes Plaintiff has not pled sufficient facts to establish that Defendant was involved in any alleged deprivation of Plaintiff's constitutional rights.

Accordingly, the Court grants Defendant's Motion to Dismiss.

## II.  Liberty-interest in earned-time credits

Even if Plaintiff alleged sufficient personal involvement by Defendant, Defendant asserts Plaintiff does not have any liberty interest in receipt of earned-time credits, and, therefore, Plaintiff cannot state a claim for relief.

The Ninth Circuit has made clear that a prisoner does not have any inherent or constitutional right to be released before the expiration of a valid sentence.  *Bergen v. Spaulding*, 881

F.2d 719, 721 (9th Cir. 1989)(citing *Greenholtz v. Inmates of Neb. Pental & Corr. Complex*, 442 U.S. 1, 7 (1979)). *See also Haggard v. Curry*, 631 F.3d 931, 935 (9th Cir. 2010)(same). Nevertheless, a prisoner may have a protectable liberty interest if a state statute creates one. *Haggard*, 631 F.3d at 935 (citing *Bergen*, 881 F.2d at 721). "The state law giving rise to that liberty interest not only creates the interest but also defines its scope and prescribes its limits." *Id*. (citing *Pearson v. Muntz*, 606 F.3d 606, 611 (9th Cir. 2010)).

When a state's statutory scheme "uses mandatory language [it] 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002)(quoting *Greenholtz*, 442 U.S. at 12), *overruled on other grounds by Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011).

In *McQuillion* a California inmate brought a habeas action asserting, among other things, that California's parole statute created a due-process liberty interest in his release date. The Ninth Circuit held "the parole scheme in California under which McQuillion was given his parole date . . . gave rise to a constitutionally protected liberty interest." 306 F.3d at 898. The Ninth Circuit noted California Penal Code § 3041 provides in pertinent part:

8 - OPINION AND ORDER

> The panel or board *shall* set a release date *unless* it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

*Id.* at 901 (emphasis in original).  The court noted the California statute used mandatory language and "create[d] a presumption that parole release will be granted."  *Id.*  The statute, therefore, created a liberty interest in release on parole.  *Id.*

In contrast, in *Carver v. Lehman* a convicted sex-offender and former inmate of the Washington Department of Corrections (DOC) brought a § 1983 action against the secretary of the DOC alleging the denial of his application for early release into community custody was a violation of his due-process rights.  558 F.3d 869, 870 (9th Cir. 2009).  The Ninth Circuit concluded the Washington law that provided for convicted sex offenders' early release into community custody did not create a liberty interest protected under the Due-Process Clause.  *Id.* at 879.  Washington Revised Code § 9.94A.710(1) at the time required individuals convicted of sex offenses to be sentenced to a term of community custody to "begin either upon completion of the term of confinement or at such time as the offender is transferred to community custody in lieu of earned release."  Accordingly,

9 - OPINION AND ORDER

inmates convicted of sex offenses and who accrued "earned release time" were not "entitled to early release; rather, [they were] eligible for discretionary transfer into community custody at an earlier date if this proposed placement is appropriate." *Id*. at 873 (citing former § 9.94A.728(2)(a)).  Section 9.94A.728(1) required the DOC "to develop a suitable program to effectuate the transfer to community custody of such inmates." *Id*.  Section 9.94A.728(2)(c) mandated the DOC to "require the offender to propose a release plan that includes an approved residence and living arrangement" as part of the program to effectuate transfer.  *Id*.  In addition, § 9.94A.728(2)(d) provided:

> The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, [1] may violate the conditions of the sentence or conditions of supervision, [2] place the offender at risk to violate the conditions of the sentence,[3] place the offender at risk to reoffend, or [4] present a risk to victim safety or community safety.  *The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement.*

*Id*. at 873-74 (citing former § 9.94A.728(2)(d))(emphasis in original).  To comply with the statute, DOC promulgated Policy Directive 350.200.  The version of Policy Directive 350.200 in force when the plaintiff submitted his release plan contained a

10 - OPINION AND ORDER

"categorical denial" of release plans "if the End of Sentence

Review Committee has determined that the offender appears to meet

the definition of a sexually violent predator and s/he has been

referred for Civil Commitment." *Id*. at 874.  The plaintiff

asserted the Washington statutory scheme created

> a protected liberty interest because it requires
> the DOC to transfer an inmate to community custody
> in lieu of earned release unless any one of the
> . . . specifically designated reasons are found
> thereby creat[ing] a presumption that . . .
> release [into community custody] will be granted,
> and that this in turn creates a legitimate
> expectation of release absent the requisite
> finding that one of the justifications for
> [denial] exists.

*Id*.  The Ninth Circuit disagreed:

> There is no explicitly mandatory language in
> section 9.94A.728(2) creating a substantive right
> to transfer to community custody.  The statute,
> using classically permissive language, states that
> a "person convicted of a sex offense . . . may
> become eligible, in accordance with a program
> developed by the department, for transfer to
> community custody status in lieu of earned release
> time."  Wash. Rev. Code § 9.94A.728(2)(a).  The
> only explicitly mandatory language in section
> 9.94A.728(2) concerns a procedural right to an
> individualized determination based on the merits
> of a proposed release plan.  That language cannot
> create a liberty interest within the meaning of
> the Fourteenth Amendment because expectation of
> receiving process is not, without more, a liberty
> interest protected by the Due Process Clause of
> the Fourteenth Amendment.

*Id*. at 874-75 (quotations omitted).

Here Oregon Revised Statute § 421.121(1)(a) provides:

> (1) Except as provided in ORS 137.635, each inmate

11 - OPINION AND ORDER

> sentenced to the custody of the Department of
> Corrections for felonies committed on or after
> November 1, 1989, is eligible for a reduction in
> the term of incarceration for:
>
> > (a) Appropriate institutional behavior, as
> > defined by rule of the Department of
> > Corrections.

In addition, Oregon Administrative Rule 291-097-0015(1) provides:

"Pursuant to ORS 421.121, inmates sentenced under sentencing

guidelines *may* earn sentence reduction credits . . . for

acceptable participation in [Oregon Corrections Plan] OCP

requirements and for maintaining appropriate institution

conduct."  Emphasis added.  In turn, Oregon Administrative Rule

291-097-0020(1)(a) provides:

> In determining whether an inmate will receive
> earned time credits for the review period under
> consideration, inmate performance will be
> evaluated in two areas:  . . . compliance with the
> Oregon Corrections Plan and . . . maintaining
> appropriate institution conduct.  The only
> possible determination for each area is
> noncompliance or compliance.

Oregon Administrative Rule 291-097-0020(3)(a), however, makes

clear that:

> (a) Oregon Corrections Plan compliance is defined
> as acceptable participation in work and self-
> improvement programs required within the OCP.  The
> required activities within the OCP are determined
> by ongoing assessment and evaluation, which begins
> at the inception of the inmate prison term.
>
> > (A)  An inmate will be considered to be
> > compliant if he/she was not failed from the
> > required program activity(ies) during the
> > review period under consideration, nor did

12 - OPINION AND ORDER

the inmate refuse to participate in required
programming during the review period under
consideration.

(B)  As needed, the counselor will
communicate with the treatment or program
providers as well as work crew supervisors to
evaluate an inmate's compliance with the
required program activity(ies).

(C)  If the inmate's counselor determines the
inmate is non-compliant with the OCP, he/she
will approve a program failure for
documentation in the inmate's computer
record.

The Court notes Oregon Administrative Rule 291-097-0015(1)
is written in permissive terms.  The Rule provides only that
inmates "*may* earn sentence reduction credits . . . for acceptable
participation in [Oregon Corrections Plan] OCP."  Emphasis added.
In addition, although Oregon Administrative Rule 291-097-
0020(1)(a) provides the only determinations available are
compliance or noncompliance, Rule 291-097-0020(3)(a) makes clear
that the inmate's counselor determines whether an inmate has
complied with the OCP based on communications with treatment or
program providers and at the counselor's discretion.

The Court concludes the language of the Oregon statutory
scheme here is more like the permissive language in *Carver* than
the mandatory language in *McQuillion*.  Accordingly, the Court
concludes Oregon Revised Statute § 421.121 and the administrative
rules relating to that statute do not create a due-process

liberty interest in the award of early release credits.[2]

## III. Qualified Immunity

Even if Oregon's statutory scheme created a due-process liberty interest in the award of Plaintiff's earned-time credits, Defendant contends he is entitled to qualified immunity because such a right was not clearly established.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Conner v. Heiman*, 672 F.3d 1126, 1131-32 (9th Cir. 2012)(quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009))

In *Saucier v. Katz* the Supreme Court held a court that is evaluating a defense of qualified immunity must first "determine whether--resolving all disputes of fact and credibility in favor of the party asserting the injury--the facts adduced at summary judgment show that the [official's] conduct violated a constitutional right" before the court determined "whether, at the time of the violation, the constitutional right was 'clearly established.'" 533 U.S. 194, 201 (2001).

In *Pearson*, however, the Supreme Court, held:

---

[2] ODOC never awarded Plaintiff earned-time credits. Plaintiff, therefore, does not allege, and this Court does not address, whether there is a liberty interest in the revocation of earned-time credits.

> [W]hile the sequence set forth [in *Saucier*] is
> often appropriate, it should no longer be regarded
> as mandatory.  The judges of the district courts
> and the courts of appeals should be permitted to
> exercise their sound discretion in deciding which
> of the two prongs of the qualified immunity
> analysis should be addressed first in light of the
> circumstances in the particular case at hand.

555 U.S. at 236.

"A Government official's conduct violates clearly

established law when, at the time of the challenged conduct,

[t]he contours of [a] right [are] sufficiently clear that every

reasonable official would have understood that what he is doing

violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083

(2011)(quotation omitted).  The Supreme Court does "not require a

case directly on point, but existing precedent must have placed

the statutory or constitutional question beyond debate." *Id*.

(citation omitted).  *See also Moss v. United States Secret

Service*, Nos. 10-36152, 10-36172, 2012 WL 1150271, at *5 (9th

Cir. Apr. 9, 2012)("A right is clearly established for purposes

of qualified immunity only where the contours of the right are

sufficiently clear that a reasonable official would understand

that what he is doing violates that right.")(quotation omitted).

Here neither party cited nor could this Court find any cases

determinating or even evaluating whether Oregon's statutory

scheme created a due-process liberty interest in the award of

earned-time credits.  In addition, neither party cited any cases

15 - OPINION AND ORDER

in which a court had considered whether the statutory scheme at issue here was permissive or mandatory.

On this record the Court concludes a reasonable official would not have been on notice that any refusal to award Plaintiff earned-time credits under the circumstances at issue here might constitute a violation of Plaintiff's right to due process. Thus, Defendant is entitled to qualified immunity as to Plaintiff's claims. Accordingly, the Court grants Defendant's Motion to Dismiss.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion (#30) to Dismiss and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 31st day of May, 2012.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


16 - OPINION AND ORDER